BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
Logan T. Talbot (SBN 300591)
1330 Broadway, Suite 1630
Oakland, California 94612
Tel. (510) 444-9300
Fax (510) 444-9301
Email: bryan@bryanschwartzlaw.com
      talbot@bryanschwartzlaw.com

*Attorneys for Plaintiff Samir Roy and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMIR ROY, individually, and behalf of all others similarly situated, and on behalf of the general public,<br><br>          Plaintiff,<br><br>  vs.<br><br>THE MI GROUP, INC.,<br><br>          Defendant. | Case No.: 3:17-cv-05800-EDL<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     November 27, 2018<br>Time:    9:00 a.m.<br>Place:   Courtroom E (15th Floor)<br><br>Magistrate Judge Elizabeth D. Laporte |

**NOTICE OF MOTION AND MOTION TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that a hearing will be held on the Unopposed Motion for Final Approval of Class Action Settlement of Plaintiff Samir Roy ("Plaintiff") and Defendant The MI Group, Inc. ("Defendant" or "MI Group"– and together with Plaintiff, the "Parties"). The hearing will be held on November 27, 2018 at 9:00 a.m. in the Courtroom of the Magistrate Judge Elizabeth D. Laporte, located at 450 Golden Gate Avenue, Courtroom E, San Francisco, CA 94102. At the hearing, the Parties will request that the Court: grant final approval of the Parties' Settlement Agreement in the gross amount of $925,000; award a service payment in the amount of $9,876.73 to Class Representative Samir Roy, paid separately from the common fund in exchange for a full general release; and enter judgment pursuant to the Parties' Settlement Agreement. This motion will be heard along with Plaintiff's unopposed motion for approval of attorneys' fees and costs, filed concurrently.

The Court granted preliminary approval to the Parties' Settlement Agreement on July 18, 2018. Dkt # 46. Support for the Settlement from Class Members has been universal. No one has objected to the Settlement to date, none of the 174 Class Members have opted out (*i.e.*, 100% are participating), and every Class Member will receive meaningful compensation. The proposed settlement is evidently fair, adequate and reasonable.

The Motion is based upon this Notice of Motion' the Memorandum of Points and Authorities in Support; the Declaration of Logan T. Talbot, Esq., in support of the motion ("Talbot Dec."); the Declaration of Jennifer Mills for Rust Consulting, Inc. ("Rust Dec."); the Unopposed Motion for Preliminary Approval and documents submitted in support thereof, including the Settlement Agreement and its exhibits; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider.

A Proposed Order is submitted herewith.

Dated: October 5, 2018                     BRYAN SCHWARTZ LAW


                                           By: _____*/s/ Bryan J. Schwartz*_____
                                                BRYAN J. SCHWARTZ

                                           *Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   THE SETTLMENT TERMS ARE FAVORABLE ...........................................1

III.  PROCEDURAL BACKGROUND ....................................................................3

IV.   THE PROPOSED SETTLEMENT IS AN EXCEPTIONAL RESULT AND THE CLASS RECEIVED ADEQUATE NOTICE OF THE CLASS ACTION SETTLEMENT ....................................................................................................4

    A.   The Settlement Agreement Provides for Substantial Recovery for Class Members. ....4

    B.   Factors in the Decision to Settle Include Defendant's Potential Insolvency and Uncertainty on Liability Concerning Exemption Defenses ...........................................4

        1.   MI Group's Potential Insolvency..........................................................4

        2.   Complex Litigation Concerning Exemption Defenses Presents Uncertainty ....5

        3.   Willfulness. ...........................................................................................6

        4.   Plaintiff May Have Recovered Less in Interest and Penalties. .........................7

    C.   The Class Received Adequate Notice of the Class Action Settlement. .......................8

        1.   The Notice Process Fulfilled the Promises Made on Preliminary Approval. ....8

        2.   The Reaction of the Class Members Demonstrates Overwhelming Support for the Settlement. ................................................................................9

V.    THE COURT SHOULD GRANT FINAL APPROVAL..................................9

    A.   Final Approval Is Warranted for a Fair, Adequate, and Reasonable Settlement Like this One .................................................................................................9

    B.   The Settlement is Non-Collusive and Was the Best Outcome of Extensive Negotiations by Experienced Counsel. ..............................................11

    C.   The Proposed Service Award to Named Plaintiff Is Fair. ............................14

    D.   The Requested *Cy Pres* Beneficiary Is Appropriate. .................................16

VI.   CONCLUSION ................................................................................................16

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) .................................................................12

*Alvarez v. IBP, Inc.*,
    339 F.3d 894 (9th Cir. 2003) ...................................................................6

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015).......................................................14, 15

*Brooklyn Sav. Bank v. O'Neil*,
    324 U.S. 697 (1945)..............................................................................7

*Buccellato v. AT & T Operations, Inc.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011).....................................14

*Bucklin v. Zurich Am. Ins. Co.*,
    619 Fed. Appx. 574 (9th Cir. 2015)......................................................6

*Christopher v. SmithKline Beecham Corp.*,
    132 S. Ct. 2156 (2012)...........................................................................6

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .............................................................11

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2013) ...............................................................16

*E.E.O.C. v. Lockheed Martin Corp.*,
    444 F.Supp.2d 414 (D. Md. 2006) .......................................................16

*Encino Motorcars v. Navarro*,
    138 S.Ct. 1134 (2018).............................................................................6

*Fleming v. Covidien Inc.*,
    2011 WL 7563047 (C.D. Cal. Aug. 12, 2011).....................................8

*Ford v. Alfaro*,
    785 F.2d 835 (9th Cir. 1986) ...............................................................7

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) .............................................................9

*Gad-Tadros v. Bessemer Venture Partners*,
    326 F.Supp.2d 417 (E.D.N.Y. 2004) ...................................................16

*Glass v. UBS Fin. Servs., Inc.*,
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007)........................................14

*Harris v. Vector Mktg.*,
    2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ..........................................................13, 14

*In re Bluetooth Headset Prod. Liability Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..................................................................................12

*In re Farmers Insurance Exchange*,
    481 F.3d 1119 (9th Cir. 2007) ..................................................................................6

*In re Novartis Wage and Hour Litig.*,
    611 F.3d 141 (2d Cir. 2010) ......................................................................................6

*In re Warner Comm'cns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ............................................................................5

*Kakani v. Oracle Corp.*,
    2007 WL 1793774 (N.D. Cal. June 19, 2007) ........................................................12

*La Parne v. Monex Deposit Co.*,
    2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) ........................................................12

*Laguna v. Coverall N. Am., Inc.*,
    753 F.3d 918 (9th Cir. 2014) ..................................................................................12

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ....................................................................................5

*Lusby v. Gamestop Inc.*,
    2013 WL 1210283 (N.D. Cal. Mar. 25, 2013) ........................................................14

*Ma v. Covidien Holding, Inc.*
    2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ..........................................................13

*Martin v. Applied Data Sys.*,
    972 F.2d 1340 (9th Cir. 1992) ..................................................................................7

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F. 2d 615 (9th Cir. 1982) ..................................................................................9

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ..................................................................................................8

*Pineda v. Bank of Am., N.A.*,
    50 Cal.4th 1389 (2010) ............................................................................................7

*Rodriguez v. West Publ.*,
    563 F.3d 948 (9th Cir. 2009) ..................................................................................13

*Rosenburg v. IBM*,
    2007 WL 2043855 (N.D. Cal. July 12, 2007) ........................................................12

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; Case No. 3:17-cv-05800-EDL

*Ross v. U.S. Bank Nat. Ass'n*,
  2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ....................................................15

*Rutti v. Lojack Corp.*,
  2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................................................14

*Staton v. Boeing*,
  327 F.3d 938 (9th Cir. 2003) .............................................................10, 11, 14

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...................................................................5

*Van Vranken v. Atl. Richfield Co.*
  901 F.Supp. 294 (N.D. Cal. 1995) ...............................................................14

*Viceral v. Mistras Grp., Inc.*,
  2017 WL 661352 (N.D. Cal. Feb. 17, 2017) .........................................................8

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) .................................................................12

*Willner v. Manpower Inc.*,
  35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014) .........................................................7

**National Labor Relations Board Decisions**

*Highland Superstores*,
  314 NLRB 146 (1994) .........................................................................16

**State Cases**

*Armenta v. Osmose, Inc.*,
  135 Cal.App.4th 314 (2005) .................................................................6-7

*Bell v. Farmers Ins. Exch.*,
  135 Cal.App.4th 1138 (2006) ...................................................................7

*Nordstrom Comm'n Cases*
  186 Cal.App.4th 576 (2010) .....................................................................8

**Statutes, Rules and Regulations**

29 U.S.C. § 213 ...................................................................................5

29 U.S.C. § 255 ...................................................................................7

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; Case No. 3:17-cv-05800-EDL

29 U.S.C. § 260 ..............................................................................................................7

California Labor Code § 203 ...........................................................................................7

California Labor Code § 226 ...........................................................................................7

California Labor Code § 1182.4 ......................................................................................5

California Labor Code § 2698, *et seq.* ........................................................................2, 7

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; Case No. 3:17-cv-05800-EDL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Roy seeks final approval of a proposed settlement of wage and hour claims on behalf of himself and a small nationwide class against the MI Group (collectively the "Parties"), upon the terms and conditions set out in the Joint Stipulation and Release ("Settlement Agreement") (Dkt # 50).

The Court issued an order preliminarily approving the Settlement Agreement on July 18, 2018 and authorizing distribution of a Notice of Class Action Settlement to Class Members. After full administration of the $925,000 non-reversionary wage-and-hour settlement in the manner approved by the Court, 173 Class Members[1] received a notice at his or her last known address, and not a single Class Member objected or opted out of the Settlement Agreement. Rust Dec. ¶¶ 11-13. It should therefore be approved.

## II.    THE SETTLEMENT TERMS ARE FAVORABLE.

Plaintiff will not reiterate all the terms of the Settlement Agreement, which were previously outlined in the preliminary approval motion approved by the Court. However, the highlights of the Settlement Agreement are as follows:

- Settlement Fund: MI Group will pay a non-reversionary amount of $925,000 ("Settlement Fund") to 174 Relocation Managers and Relocation Associates, plus the employer's share of payroll taxes.[2] The Net Settlement Amount will total approximately $658,312.50. This amount will be distributed *pro rata* to all eligible Class Members based on the number of work weeks each class member was employed by MI Group, and whether or not he or she worked in California (where there are additional, valuable claims). Class Members will each be paid an average gross settlement award of $3820.96 in exchange for releasing their wage claims.—the median amount of the Class's individual settlement award distribution is $3,732.85. (Talbot Dec. at ¶3). Because there are fewer actual Class Members than estimated

---

[1] The Settlement Administrator was unable to obtain a current address for a single class member after diligently conducting a search using the class member's name, previous address, and Social Security Number. *See* Rust Dec. ¶10.

[2] When Defendant provided the Administrator with the class information for the distribution of the Settlement Notice after preliminary approval, it became clear that there were, in fact, only 174 class members, rather than the approximately 182 Class Members previously indicated in Plaintiff's Motion for Preliminary Approval. *See* concurrently filed Declaration of Logan Talbot in Support of Plaintiff's Motions for Final Approval; Attorneys' Fees, Costs, and Service Award to Class Representative at ¶ 2 ("Talbot Dec.").

at preliminary approval, the average net allocation is higher than the amount previously reported to the Court, which the Court preliminarily approved. (Talbot Dec. ¶ 2). The allocations of any Class Members who fail to cash their settlement checks for 120 days will be distributed to the *cy pres* beneficiary Legal Aid at Work, as set forth in the Settlement Agreement (Dkt #50 at p. 15, ¶¶ F(5)-(6), F(8)).

- Service Award: The Settlement provides for named Plaintiff Samir Roy to receive a $5,000 service award for serving as Class Representative, which undersigned counsel   believes is the minimum adequate payment for stepping forward in this matter, fear of/actual reputational harm and retaliation, working with Plaintiff's counsel, and the risks undertaken to pay for the costs in this action in the event of an unsuccessful outcome. (Dkt # 39-6, Schwartz Dec. at ¶ 12; *see* Dkt #38-2, Roy Dec., ¶¶ 4, 7-8).

- Consideration for Broader Release to Named Plaintiff Roy: The Settlement provides for Plaintiff to receive a payment of $9,876.73, an amount equal to the severance that he could not previously accept in light of his duties to the Class, paid separately from the common fund, as consideration for his broader, general release of known and unknown claims against MI Group. (Dkt # 39-6, Schwartz Dec. ¶ 12; Dkt # 38-2, ¶5).

- Class Counsel's Fees and Costs: The Settlement provides attorneys' fees in an amount of up to $231,250 – one-fourth (25%) of the common fund – and $3,464.69 in Plaintiff's counsel's actual litigation costs (filing and service costs, costs to bankruptcy counsel), which are minimal, given the efficient resolution of this matter. (Talbot Dec. ¶¶ 4-5).

- Settlement Administration: Settlement administration costs are to be paid out of the Settlement Fund, in an amount up to $13,500. The Court approved and appointed Rust Consulting, Inc. ("Rust") as the Claims Administrator, and Plaintiff now seeks approval of payment of the administration costs, as documented in the Declaration of Jennifer Mills for Rust Consulting ("Rust Dec.") filed with this motion. (Rust Dec. ¶14).

- LWDA Payment: A payment to California's Labor Workforce Development Agency ("LWDA") for California Labor Code Private Attorneys' General Act (PAGA) claims of $6,937.50 (75% of the $9,250 allocated to PAGA, under Cal. Labor Code §2698, *et seq.*).

(Dkt #50 at p. 6, ¶C(1)(f)).

- <u>Reclassification</u>: Effective August 30, 2018, MI Group will reclassify all of its Relocation Managers and Relocation Associates as non-exempt. (Dkt #50, at p. 18, ¶H(6)).

- <u>Funds Secured</u>: Due to Plaintiff counsel's concerns regarding Defendant's financial outlook, the undersigned secured Defendant's early payment of the entire settlement amount into escrow, which occurred on August 2, 2018 (Rust Dec. ¶6). As such, there will be no delay in Class Members receiving their payments.

## III.   PROCEDURAL BACKGROUND

As Plaintiff briefed in the preliminary approval motion, Plaintiff Roy filed his complaint on October 6, 2017 against Defendant MI Group, Inc. On December 18, 2017, Plaintiff filed his First Amended Complaint to include Private Attorneys General Act (PAGA) penalties. See Dkt #13-1. The parties held the first Case Management Conference on January 9, 2018. Dkt #20. Defendant answered the operative First Amended Complaint on January 19, 2018. Dkt #21.

Plaintiff initiated formal discovery on January 4, 2018, propounding requests for production of documents and interrogatories. Dkt # 39-6, Schwartz Dec. ¶3. Shortly thereafter, Plaintiff and Defendant entered an agreement to produce documents informally for the purpose of facilitating settlement discussions. *Id.* at ¶ 4. The Parties exchanged extensive data, information, and documents concerning the claims, defenses, and alleged damages at issue, including information about the class size and about Defendant's current financial outlook. *Id.* The Parties engaged in arms'-length negotiations over the course of months. *Id.* at ¶¶ 5-7. June 7, 2018, the parties finalized and executed the Settlement Agreement. *Id*. at ¶ 2.

The Court granted preliminary approval on July 18, 2018. On August 17, 2018, Rust distributed class notice by first-class mail to last known addresses of the 174 class members. *See* Rust Dec. ¶9. The Notice detailed the key terms of the proposed Settlement and provided the information that would be used to calculate each Class Member's *pro rata* share. *Id.* at ¶5. Six notices from the initial mailing were returned with bad addresses, but ultimately, through the efforts of the Parties and the administrator, every Class Member except for one received the class notice at his or her best-known addresses without bounce-backs. *Id*. at ¶10.

No class member has filed an objection or elected to opt out. Rust Dec. at ¶12-13. Because this is not a case in which Class Members must file a claim to receive their share of the settlement funds, all Class Members will be sent settlement payments. By negotiating a check, each Class Member will also opt-into the FLSA settlement and release claims, which will be described on the back of each check. Dkt #50, at p. 15, ¶F(3). If any Class Member does not timely negotiate his/her payment, despite Rust's and Plaintiff's counsel's multiple efforts to locate and notify him/her, the unpaid funds will be distributed to the approved *cy pres* beneficiary: Legal Aid at Work. *Id.* at p. 15, ¶¶ F(5)-(6), F(8).

## IV.    THE PROPOSED SETTLEMENT IS AN EXCEPTIONAL RESULT AND THE CLASS RECEIVED ADEQUATE NOTICE OF THE CLASS ACTION SETTLEMENT.

### A.    The Settlement Agreement Provides for Substantial Recovery for Class Members.

The terms of the Settlement Agreement are described in detail in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, and discussed *supra*, in section II. Essentially, the Settlement provides ample compensation to be paid immediately to all 174 Class Members. The entire Settlement fund of $925,000 is already in escrow, and will be paid to Class Members within 30 days of this Court's final approval.  The deal is non-reversionary and designed to ensure swift payment to Class members of their settlement amount. In addition, MI Group will separately pay its share of payroll taxes, and MI Group has agreed to reclassify Relocation Associates and Relocation Managers as non-exempt employees, effective August 30, 2018. Dkt #50 at p. 18, ¶ F(5)-(6), H(6).

### B.    Factors in the Decision to Settle Include Defendant's Potential Insolvency and Uncertainty on Liability Concerning Exemption Defenses.

Based on the uncertainty in prevailing on the merits of Plaintiff's claims and the likelihood of MI Group filing for bankruptcy if faced with further litigation and a large judgment, this resolution is favorable. Factors the Parties considered in settling included:

#### 1.    MI Group's Potential Insolvency

Defendant MI Group provided Plaintiff's counsel with detailed financial information about the company's financial status, which demonstrated to Plaintiff's counsel's satisfaction, after consultation with outside bankruptcy counsel, that there is additional risk in this case in light of Defendant's grave financial situation, which could result in bankruptcy if Plaintiff did not accept this settlement. Dkt # 39-6, Declaration of Bryan J. Schwartz ISO Plaintiff's Motion for Preliminary Approval - at ¶ 10a

("Schwartz Dec."); Dkt # 39-8, Declaration of Daniel H. Reiss ISO Plaintiff's Motion for Preliminary Approval at ¶¶ 5-6 ("Reiss Dec."). Based on MI Group's current operating losses, limited asset based, and upward trend of the company's overall debt, further litigation and a large judgment by Plaintiff would result in collection difficulties and could cause the company to file for bankruptcy or go out of business. *Id.*

The Ninth Circuit has repeatedly indicated that the risk of a defendant's bankruptcy is a factor weighing in favor of settlement approval. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (rejecting objector's challenge to class action settlement where the lower court "meaningfully accounted for potential value of members' claims . . . and noted risks of bringing such claims to trial, and evidence indicated that one of defendants that could be subject to liability under [a particular theory] was on verge of bankruptcy."); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (evaluating class action settlement adequacy, finding, "Here one factor predominates to make clear that the district court acted within its discretion. That factor is [the defendant's] financial condition."). Simply put, because "the prospect of a bankrupt judgment debtor down at the end of the road does not satisfy anyone involved in the use of class action procedures," this factor strongly supports granting final approval here. *See In re Warner Comm'cns Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985).

Here, MI Group could file for bankruptcy at a moment's notice—making collection of any judgement highly speculative as to amount and potentially causing years of delay, even if any recovery is ultimately achieved for Plaintiff and the putative class. Accordingly, the Settlement is the best result for the Class under the circumstances, in Class Counsel's opinion. Dkt # 39-6, Schwartz Dec. at ¶ 8; Dkt #39-8, Reiss Dec. ¶7.  The Settlement provides the Class Members with meaningful cash payments later this year, without threatening the company's viability, and mandates reclassification of the positions at issue as non-exempt, while avoiding significant legal, enforceability, and factual hurdles that could have altogether precluded any recovery for the Class Members.

**2.    Complex Litigation Concerning Exemption Defenses Presents Uncertainty.**

Plaintiff asserts that the white-collar exemptions under the FLSA and California overtime laws do not apply to Relocation Associates and Relocation Managers. *See* 29 U.S.C. § 213(a)(3); Cal. Lab. Code § 1182.4. However, there is no known case that addresses whether jobs like those as issue –

employees of a moving logistics company – may be classified as exempt. Dkt # 39-6, Schwartz Dec. at ¶ 10b. The U.S. Department of Labor has issued an opinion letter stating Acquisition Agents, Relocation Agents, and Property Management Agents for a land-acquisition service firm are *exempt* from the minimum wage and overtime requirements of the Fair Labor Standards Act (FLSA) as administrative employees under section 13(a)(1). *See* Dept. of Labor Opinion Letter, June 29, 2006, https://www.dol.gov/whd/opinion/FLSA/2006/2006_06_29_23_FLSA.htm (last accessed on October 1, 2018). The trier of fact could find MI Group's employees similar to a land-acquisition service's agents, or similar to some other group of exempt workers.

Misclassification cases always present a significant risk of losing on the merits, even after extensive litigation, as in *In re Farmers Insurance Exchange*, 481 F.3d 1119, 1132 (9th Cir. 2007) (reversing a $52.5 million plaintiffs' verdict, finding claims adjusters exempt). *See also Bucklin v. Zurich Am. Ins. Co.*, 619 Fed. Appx. 574 (9th Cir. 2015) (claims adjusters exempt under administrative exemption, despite "routine" and clerical aspects of their position). *See also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) (abrogating *In re Novartis Wage and Hour Litig.*, 611 F.3d 141 (2d Cir. 2010)). In *Novartis*, after winning at the Second Circuit, plaintiffs settled for $99 million – and were granted final approval less than a month before the *Christopher* decision, which would have left them empty-handed. Defendant likely would have argued that the Supreme Court's recent jurisprudence only lends support to their right to claim an exemption defense. *See, e.g., Encino Motorcars v. Navarro*, 138 S.Ct. 1134 (2018) (abrogating jurisprudence holding that FLSA exemptions should be construed narrowly). This Settlement removes the risk to Plaintiff of an unfavorable interpretation of the federal or state administrative exemptions on the instant facts, and, further, ensures that MI Group will properly compensate its Relocation Associates and Relocation Managers going forward. Dkt # 39-6, Schwartz Dec., ¶ 10. The myriad uncertainties surrounding complex litigation involving misclassification under the wage laws weigh strongly in favor of granting final approval of this settlement.

### 3. Willfulness

For maximum recovery, Plaintiff would have to prove that MI Group's alleged violations of the labor laws were willful, under the FLSA and California Labor Code. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (FLSA standard for willfulness); *Armenta v. Osmose, Inc.*, 135 Cal.App.4th

314, 325 (2005) (standard under Labor Code §203); *Willner v. Manpower Inc.* 35 F.Supp.3d 1116, 1131 (N.D. Cal. 2014) (standard for "knowing and intentional" violation under Labor Code § 226). If Plaintiff was unable to establish the requisite level of intent, the statute of limitations under the FLSA would be reduced to two years. *See* 29 U.S.C. § 255(a). In addition, if MI Group were successful in asserting a good-faith defense, such would bar Plaintiff's claims under Labor Code §§ 203 and 226, and eliminate liquidated damages for the FLSA class. *See* 29 U.S.C. § 260. In light of the lack of authority directly on point, Defendant MI Group might persuade the trier of fact that their misclassification of Class Members was based upon a good-faith, mistaken belief. Dkt # 39-6, Schwartz Dec., ¶ 10.

### 4.    Plaintiff May Have Recovered Less in Interest and Penalties.

Two-thirds of the settlement payment is related to interest and penalties. Dkt #50, pp. 4-5 at ¶ C(1)(c)(iv). The estimate is reasonable because penalty claims asserted are a significant proportion of the estimated damages exposure, and because litigation interest rates can be high—the interest rate for the California class is 10% and could arguably have begun to accrue as early as October 2013 for the California class. *See Bell v. Farmers Ins. Exch.*, 135 Cal.App.4th 1138, 1150 (2006) (affirming 10 percent prejudgment interest rate on unpaid wages).

Absent the Settlement, Plaintiff would be at risk of failing to recover interest and penalties, in full or in part. Liquidated damages and pre-judgment interest are not *both* awarded after a successful judgment in a FLSA case (*Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986)), and the Ninth Circuit has also permitted only partial pre-judgment interest. *See Martin v. Applied Data Sys.*, 972 F.2d 1340 (9th Cir. 1992). Defendants asserting a good-faith defense have long argued that a court is permitted to deny both interest and liquidated damages. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945).

California penalty recoveries are capped and limited by shorter statutes of limitations. *See Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1398 (2010) (one year under Cal. Lab. §226 and up to three years under Cal. Lab. §203); Cal. Lab. § 226(e)(1) ($4,000 maximum recovery).

Here, PAGA claims have been allocated one percent of the common fund, or $9,250, which is nonetheless discounted from full PAGA relief, to account for the Court's discretion to reduce such penalties, under Cal. Labor. Code § 2699(e)(2), and because much of the claimed damages are on account of other Labor Code claims and non-California-based wage claims. Dkt #50, p. 6 at ¶ C(1)(f).

1    *See, e.g., Viceral v. Mistras Grp., Inc.,* 2017 WL 661352, at *1, 3 (N.D. Cal. Feb. 17, 2017) (Chen, J.)

2    (approving PAGA penalties worth 0.33% of gross settlement amount and worth 0.15% of total estimated

3    value of PAGA claims); *Fleming v. Covidien Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011)

4    (reducing PAGA penalties by 82%); *Nordstrom Comm'n Cases,* 186 Cal.App.4th 576, 589 (2010)

5    (approving $0 PAGA allocation, because a settlement of PAGA claims must be considered in the context

6    of the overall settlement of the case and need not allocate any portion of the recovery to PAGA to

7    warrant court approval). In light of the foregoing, the Court should view favorably that the settlement

8    agreement provides significant penalty and interest compensation.

9        **C.**      **The Class Received Adequate Notice of the Class Action Settlement.**

10          **1.**      **The Notice Process Fulfilled the Promises Made on Preliminary Approval.**

11        In granting preliminary approval of the Settlement on July 18, 2018, the Court determined that

12    the Settlement was within the range of possible final approval and ordered that notice regarding the

13    Settlement terms and proposed scheduling of the final fairness hearing be distributed to the class. The

14    Claims Administrator distributed the Class Notice to the Class on August 17, 2018, in accordance with

15    the Court's preliminary approval order.

16        The Claims Administrator employed the best practicable means to distribute the Class Notice

17    containing the settlement terms and date and time of the final approval hearing to all Class Members.

18    The Class Notice, which was approved by this Court as to content and form, fairly and clearly described:

19    (1) the proposed Settlement terms; (2) the amounts requested for Plaintiff Roy's service award,

20    attorneys' fees and costs, and administration costs; (3) the manner in which Class Members could object

21    to, or participate in, the Settlement; and (4) the manner in which Class Members could opt-out of the

22    Settlement. Further, the Class Notice provided the method and data used to calculate each Class

23    Member's *pro rata* share of the Settlement and explained how Class Members can challenge that data.

24        Using Class Member contact information provided by MI Group, as well as follow-up address

25    searches/traces and re-mailing methods, the Settlement Administrator mailed the Class Notice

26    employing the best practicable means to disseminate notice of the Settlement terms and date and time

27    of the final approval hearing to all Class Members. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797,

28    811-12 (1985) ("best practicable" notice provides a description of the litigation and explanation of the

right to opt out or object). Ultimately, the Class Notice was delivered to every Class Member, except for a single class member whose addresses could not be determined after the Settlement Administrator employed the best practical means to locate them. Rust Dec., ¶10. Plaintiff's counsel conducted a search for the only missing class member in "Spokeo," an online database of public records that allows users to search for individuals by name and left two voicemails on telephone numbers produced by the search. Talbot Dec. ¶ 10. Plaintiff's counsel located an individual with the same name as the missing class member that also indicated working as a Relocation Associate for MI Group on LinkedIn, a social media professional networking website. *Id.* Plaintiff's counsel sent the Class Notice and a brief message explaining the settlement and instructions to contact the Settlement Administrator in a direct message to the missing class member's suspected LinkedIn profile. *Id.*

### 2. The Reaction of the Class Members Demonstrates Overwhelming Support for the Settlement.

Evidently, the extensive efforts of the Settlement Administrator and Class Counsel were fruitful and the terms of the settlement were well received. None of the 174 Class Members filed an objection to the settlement, or requested to be excluded from the action. Rust Dec., ¶¶ 12-13.

## V.    THE COURT SHOULD GRANT FINAL APPROVAL.

### A.    Final Approval Is Warranted for a Fair, Adequate, and Reasonable Settlement Like this One.

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982).

Although Rule 23 provides no precise formula for making this determination, the Ninth Circuit has identified several factors to be considered: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation;

(4) the stage of the proceedings, *i.e.*, whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; (6) the presence of a government participant; and, (7) the reaction of the class to the proposed settlement. *See Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (noting that the relative importance of each of these factors will depend on the circumstances of the case).

Here, all of the relevant factors weigh in favor of final approval:

*First*, Plaintiff believes his claims on the merits are strong, but Plaintiff faces the risk of an unfavorable interpretation of the exemption defenses, as well as adverse decisions on questions of willfulness and good faith.

*Second*, the Settlement Amount is a sizable recovery for the Class in light of MI Group's potential inability to pay. (Talbot Dec. at ¶ 3). The Settlement also includes a significant injunctive relief component, as MI Group has agreed to reclassify Relocation Associates and Relocation Managers as non-exempt employees.

*Third,* the complexity and the expense of a Class trial would be considerable, and would almost certainly result in appeals by one or both sides given the lack of authority, including possible interlocutory appeals at various stages of the proceedings. The complexity and the expense of a Class trial would further reduce the diminishing pie of assets available to compensate the Class. Moreover the risk of failing to maintain Class status is modest (though Defendant would argue that different client accounts, locations, and position titles create individualized issues), but maintaining Class status would not matter if Defendant were ultimately unable to pay.

*Fourth*, the Parties have engaged in discovery, including exchanging information and documents necessary to assess the value of each Class member's claims to make a reasonable estimate of the value of the claims.

*Fifth*, the firm representing Plaintiff is highly experienced in wage and hour class actions, having had wage and hour settlements approved repeatedly by this Court and numerous other courts in the Ninth Circuit and elsewhere. *See* the contemporaneously-filed attorneys' fees motion. In the view of undersigned counsel, this Settlement is in the best interests of the Class in light of the risk and delay of

1    a class action trial and appeal, as compared with the immediate and substantial recovery in the

2    Settlement.

3         *Sixth*, there is no governmental entity involved.

4         *And, seventh*, with respect to the Class's reaction, only the named Plaintiff and one Class

5    Member that consented to join under FLSA have stepped forward in this case, so for most of the Class,

6    the Settlement payment came as a welcome surprise.

7    ### B.    The Settlement is Non-Collusive and Was the Best Outcome of Extensive Negotiations by Experienced Counsel.

8

9         Settlements that are reached as a result of arm's-length bargaining between experienced and

10   well-informed counsel, after thorough investigation, are entitled to a presumption of fairness. *See Staton*,

11   327 F.3d at 960; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). This proposed

12   Settlement was the product of non-collusive negotiations. Dkt # 39-6, Schwartz Dec. at ¶ 9.Only after

13   months of back-and-forth negotiations and Plaintiff's consultation with experienced bankruptcy counsel

14   about Defendant's financial health did the Parties agree to a solution to avoid very harsh consequences

15   for all parties: the possible filing of bankruptcy for MI Group—potentially resulting in the end of MI

16   Group's business, and a smaller, extremely delayed recovery (if any) for Plaintiff and the Class. *Id.* at

17   ¶¶ 9-10; *see also* Dkt # 39-8, Reiss Dec. ¶¶ 4-7.

18        Plaintiff supports the Settlement because his prospects of collecting more than the settlement

19   amount if he proceeds to trial are highly uncertain, for at least the following reasons: (1) Plaintiff risks

20   an unfavorable interpretation of the administrative exemption or other exemptions to coverage under the

21   FLSA and relevant state law; (2) Plaintiff must establish MI Group's willfulness and the absence of

22   good faith to extend the FLSA's statute of limitations and obtain certain penalties under the California

23   Labor Code; and, (3) Defendant's insolvency issues present collection issues even if Plaintiff prevails

24   on his claims. Dkt # 39-6, Schwartz Dec. at ¶ 10.

25        For the foregoing reasons, among others, the Parties conclude that the Settlement — which will

26   provide certain and significant compensation to the class members — is the best outcome for the Parties

27   under the circumstances. Dkt # 39-6, Schwartz Dec. at ¶8. In addition to significant compensation,

28

Defendant has agreed to bear the employer's share of payroll taxes. *See Rosenburg v. IBM*, 2007 WL 2043855, at *3 (N.D. Cal. July 12, 2007) (noting this factor favorably). There is *no reversion* to Defendant unless the Settlement fails. *See La Parne v. Monex Deposit Co.,* 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) (favoring a non-reversionary settlement under similar circumstances). *Cf. Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) (disapproving reversion); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (noting that reversion of class members' recovery to the defendant is one indication of collusion in the settlement process).

Plaintiff and the putative Class Members are and have been represented by experienced counsel, who fought for terms most advantageous to the entire class over the course of many months. Dkt # 39-6, Schwartz Dec. ¶¶ 8-9, 18. Among other advantageous terms, in addition to the non-reversionary nature of the agreement, undersigned counsel: insisted that Defendant will pay the employer's share of payroll taxes; secured the Total Settlement Amount of $925,000, which was transferred promptly into a fund administered by the Settlement Administrator on August 2, 2018 (Rust Dec. ¶ 6); and, Plaintiff's counsel negotiated that Defendant reclassify the positions as non-exempt, effective August 30, 2018. Dkt # 39-6, Schwartz Dec. at ¶¶ 14-15; Dkt #50, p. 18 at ¶ H(6).

MI Group's reclassification and reorganization going forward should be weighted heavily. *See, e.g., In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (considering that benefits to the class went beyond the settlement fund); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 923 (9th Cir. 2014) (vacated on other grounds) (taking injunctive relief into account in assessing settlement value); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ("Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in evaluating settlement).

The Settlement will provide Class Members with an average gross settlement award of $3820.96 in exchange for releasing their wage claims.—the median amount of the Class's individual settlement award distribution is $3,732.85. Talbot Dec. at ¶3. Here, as noted, Plaintiff's expected recovery upon a victory at trial is severely limited by Defendant MI Group's ability to pay, which would only diminish over time. Counsel for Plaintiff is confident that if Plaintiff won at trial – assuming MI Group remained

solvent long enough to reach trial – the Class would ultimately fare worse than if this Settlement is approved. Dkt # 39-6, Schwartz Dec. at ¶ 10; Dkt # 39-8, Reiss Dec. ¶¶ 4-7.  After consulting with bankruptcy counsel, Plaintiff's counsel believes that the Class would not have a high likelihood of obtaining $925,000 in bankruptcy proceedings, and that recovery would come many years down the road. Plaintiff's counsel has pushed to ensure that the settlement amount is the largest possible amount that MI Group can pay at this time without being forced into bankruptcy. Dkt # 39-6, Schwartz Dec. at ¶ 15; Dkt # 39-8, Reiss Dec. ¶¶ 4-7.

Moreover, the Court need not compare the Settlement to an estimated full-relief, best-day outcome in the case if it were fully litigated. *Rodriguez v. West Publ.*, 563 F.3d 948, 965-966 (9th Cir. 2009). The Ninth Circuit explains:

> We are not persuaded … by Objectors' further submission that the court should have specifically weighed the merits of the class's case against the settlement amount and quantified the expected value of fully litigating the matter…. [T]he Seventh Circuit directs courts to "'estimate the range of possible outcomes and ascrib[e] a probability to each point on the range.'" *Id.* However, our approach, and the factors we identify, are somewhat different. We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, *Hanlon,* 150 F.3d at 1027; *Officers for Justice* [*v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982)], and have never prescribed a particular formula by which that outcome must be tested. As we explained in *Officers for Justice,* "[u]ltimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." 688 F.2d at 625 (internal quotation marks and citation omitted).

*Rodriguez*, 563 F.3d at 965.

Even so, the monetary relief provided in this Settlement compares favorably with the estimated full relief for Plaintiff and the Class Members' claims. The estimated value of compensating the class for past injuries based upon their misclassification (*see Rodriguez,* 563 F.3d at 964-965) is approximately $2.98 million. Dkt # 39-6, Schwartz Dec. at ¶ 23. The $925,000 recovered is thus arguably more than 25% to nearly one-third of the total exposure in the case – a strong result, warranting this Court's approval. Compare this result to *Ma v. Covidien Holding, Inc.,* 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014), in which the Court found that a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id. See also Harris v. Vector Mktg.,* 2012 WL 381202, at *2 (N.D. Cal. Feb. 6, 2012) (approving settlement of 15.7% of the total maximum verdict value).

On the other hand, settlements that have been disapproved are dramatically different from this one. For example, in *Lusby v. Gamestop Inc.*, 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013), the rejected settlement would have been $750,000 for 13,872 people – paying a net of $0.26/shift.

### C.    The Proposed Service Award to Named Plaintiff Is Fair.

The Class Representative's modest service award is justified under the case law and the facts of this case. *See, e.g.*, *Staton*, 327 F.3d 977 (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding named plaintiff in wage and hour class action $10,000 as a service award, and an additional $5,000 award solely for the general release that the named plaintiff executed as part of the settlement agreement); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's enhancement: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. *Id*. at 299. These factors all support the need for a service award to the Class Representative here. Moreover, the $5,000 amount for the service award for Plaintiff Roy is presumptively-reasonable, and well within the range of service awards approved by this Court and numerous others. *See Harris*, 2012 WL 381202 at *7 ($5000 service award is "presumptively reasonable"); *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (approving service award of $20,000 for one class representative, $5,000 for four others, and collecting cases).

First, Plaintiff Roy placed himself in reputational risk and harm by severing ties with Defendant, losing a source of job references and future job employment opportunities by participating in this lawsuit. Dkt # 38-2,, Roy Decl., ¶¶ 7-8; *see Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) (citing research, noting the "strong disincentives for employees to participate in a class

action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"); *Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (service awards based on "willingness to serve as representatives despite the potential stigma that might attach to them from taking on those roles").

Second, Plaintiff Roy has spent dozens of hours on this case, coming forward as the only named Plaintiff in this lawsuit (none of the Class would be recovering anything otherwise), reaching out to other Class Members and providing their contact information to counsel, producing documents to assist Plaintiff's counsel with drafting the complaint, reviewing pleadings and agreements, and consulting extensively with Plaintiff's counsel about the case, both before and after the case was filed. Dkt # 39-6, Schwartz Dec. ¶ 12; Dkt # 38-2, Roy Dec. ¶ 6.

And finally, the personal benefit that Class Representative Roy would receive if he received the same settlement payment as the rest of the Classes would not come close to compensating him for the foregoing personal costs he has paid in order to benefit the class. In addition, Plaintiff will not personally benefit from MI Group's reclassification of Relocation Associates and Relocation Managers, although future Relocation Associates and Relocation Managers (and likely other employees in the relocation industry) will enjoy that benefit as a result of Plaintiff's willingness to step forward and prosecute this case. Dkt # 39-6, Schwartz Decl. at ¶ 13. Plaintiff had to risk losing a severance payment likely worth *more* than his individual settlement allocation before a service payment – and, if he had chosen to pursue his claims individually, they could have been worth closer to full relief than what he is receiving as a Class Member. *Id.*; Dkt # 38-2, Roy Decl. ¶ 5.

For the foregoing reasons, undersigned counsel believes that the $5,000 amount requested for Plaintiff Roy's service to the Class is the minimum service award in a case of this nature which would viably promote the public policy interest in encouraging those with wage-and-hour claims to assert them despite the fears, personal burdens, and time associated with doing so. Dkt # 39-6, Schwartz Dec. at ¶ 12.

Plaintiff is also seeking approval for the payment of $9,876.73 to Plaintiff Samir Roy as consideration for Plaintiff Roy's execution of a general release, which constitutes a broader waiver of claims than other class members. *See* Dkt # 50, pp. 6-7 at ¶ C(1)(g); *see also Bellinghausen,* 306 F.R.D.

at 268 (awarding separate consideration for the general release that the named plaintiff executed as part of the settlement agreement). Plaintiff requests $9,876.73 because it is an amount equal to the severance Class Representative Roy was offered by MI Group at the time of his layoff on September 20, 2017, which was based upon his length of service, but which he was unable to collect at the time because it required a general release in exchange, and he was in service of the Class in this matter. *See* Dkt # 50, pp. 6-7 at ¶ C(1)(g); *see also* Dkt # 38-2, Roy Dec., Exhibit A. Plaintiff Roy should not lose his severance because he was serving the Class.[3] This allocation will not be deducted from the Settlement Amount, and Plaintiff Roy will be issued an IRS Form W-2 for his payment for a general release. *See* Dkt # 50, pp. 6-7 at ¶ C(1)(g).

### D.     The Requested *Cy Pres* Beneficiary Is Appropriate.

For the reasons stated in Plaintiff's Unopposed Motion for Preliminary Approval, the *cy pres* beneficiary, Legal Aid at Work, meets the test under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013), "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." This case is a workers' rights suit seeking to enforce wage protections in California. Legal Aid at Work (https://legalaidatwork.org), is the leading provider of direct legal services for low-wage workers in California. Dkt # 39-6, Schwartz Dec. at ¶ 21. The Court should grant final approval of this beneficiary.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the class settlement reached in this matter; award the requested service payments; approve the attorneys' fees and costs awards (for the reasons described in the contemporaneously-filed, separate fee/cost motion), and enter the proposed order and judgment accordingly.

//

//

---

[3] Jurisprudence would prevent retaliation against an employee, by denial of severance, for filing a claim – illustrating the equity and propriety of awarding Plaintiff this severance payment now, instead of having him effectively penalized by losing it. *See, e.g., E.E.O.C. v. Lockheed Martin Corp.*, 444 F.Supp.2d 414 (D. Md. 2006) (denial of employee's severance benefits was causally connected to her EEOC charge, establishing prima facie case of retaliation under Title VII); *Gad-Tadros v. Bessemer Venture Partners*, 326 F.Supp.2d 417 (E.D.N.Y. 2004) (employee stated sufficient Title VII claim, that employer retaliated against her by withdrawing her severance); *Highland Superstores,* 314 NLRB 146 (1994) (employer violated Section 8 of the NLRA by threatening employees during negotiations with termination and threatening withdrawal of its severance package proposal in retaliation for employee handbilling).

1    Dated: October 5, 2018                          BRYAN SCHWARTZ LAW

2

3                                                    By: _____/s/ Bryan J. Schwartz_____
                                                          BRYAN J. SCHWARTZ

4                                                    *Attorneys for Plaintiff and the Class*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; Case No. 3:17-cv-05800-EDL